## NICHOLSON-WATSON SHOE AND CLOTHING COMPANY v. J. L. URQUHART.

Decided May 27, 1903.

**1.—Corporation—Stock Subscription—Time of Payment.**

Where, at a meeting of the stockholders of a corporation, it was agreed that all stock subscribed for should be paid for by the owners thereof about the time the business of the corporation opened, this did not make time of the essence of the contract of subscription so as to make the payment as indicated a condition precedent to a subscriber's right to afterwards demand his stock upon tender of what remained due thereon, and to recover for its conversion by the corporation.

**2.—Same—Forfeiture of Stock—Notice.**

Where the corporation declared a forfeiture of a subscriber's stock for his failure to pay installments due thereon, without giving him thirty days' notice, as required by the statute, such action was illegal and void. Rev. Stats., art. 668.

**3.—Same—Conversion—Liability—Measure of Damages.**

Such illegal forfeiture, in connection with the action of the corporation in declining to deliver the stock upon tender by the subscriber of the amount due thereon, and in canceling the certificates, amounted to a conversion of the stock, rendering the corporation liable for its actual value at that date, less the amount due thereon by the subscriber.

Appeal from the District Court of Jefferson. Tried below before Hon. J. D. Martin.

*Hardy & Hardy, Callicutt & Call,* and *Lanier, Bullitt & Wilson,* for appellant.

*Hazlewood & Gordon* and *Smith, Crawford & Sonfield,* for appellee.

Neill, Associate Justice.—So far as it is involved in this appeal, this suit was brought by appellee against appellant for the possession of twenty shares of its capital stock, claimed by appellee as a subscriber therefor, or in the alternative to recover $3000 damages for the conversion of said stock, the par value of which was alleged to be $100 per share, and the market value at the time of the alleged conversion $250 per share. The company answered denying plaintiff's subscription claim to the stock, alleging that his proposition to subscribe therefor was accepted upon the condition precedent that he should pay the full par value of the stock by the time the store of the company opened in Beaumont, and if he failed to do so his subscription should be forfeited; that he failed to pay for the stock according to the conditions of his subscription, and made no claim against the company for the shares sued for until about November 20, 1901.

The case was tried by the court without a jury, and judgment rendered for the plaintiff for $2385 against the company as damages for the conversion of the stock. These are the conclusions of fact found by the trial judge, upon which the judgment appealed from was rendered:

Appellant company was incorporated under the laws of Texas in June, 1901, with its principal office and place of business at Beaumont, Texas, with a capital stock of $10,000, divided into shares of $100 each. Plaintiff Urquhart was one of the incorporators and promoters of the company, and before the organization thereof agreed with the other promoters to subscribe for $2000 worth of the capital stock of said company. There was no written subscription for stock by any of the stockholders, but on the 1st day of July, 1901, ten stock certificates of the par value of $200 each were issued plaintiff, signed by the president and secretary of the company, and sent by its secretary, together with the stock certificates of its other subscribers, to the Beaumont National Bank of Beaumont, Texas, with instructions to deliver to each subscriber upon payment of the amount due. On or about the 1st day of July, 1901, the plaintiff deposited in the said Beaumont National Bank $385 to the credit of defendant company as a part payment of his subscription for said stock, which money was drawn out of the bank and used by defendant in fitting up its storehouse in Beaumont, in which its business was carried on. At a meeting of the company's stockholders at Corsicana, Texas, on the 15th day of June, 1901, plaintiff being present, it was agreed that all stock subscribed for should be paid for by the owners thereof about the time the business of the corporation opened. It opened business on the 20th day of July, 1901. On the 25th day of November, plaintiff applied to the cashier of the Beaumont National Bank for his stock, making no tender of the money due, but offered to pay the balance due on the same, but the cashier refused to deliver the certificates to him, giving as a reason that the bank had been instructed

by the secretary of the defendant company not to deliver the same. On the next day the bank returned the certificates of stock that had been issued to plaintiff by one J. S. Hudson, the secretary of defendant company, and on January 1, 1902, at a meeting of the directors of the company, his certificates of stock were indorsed canceled. No notice of this meeting nor of the action of the directors was given to plaintiff. That the balance due on the stock subscribed for by plaintiff is $1615, and that its value is $4000.

Upon these conclusions of fact the trial court found the following conclusions of law:

(1) That the time of payment was not of the essence of plaintiff's contract of subscription, and that the time of payment did not constitute an antecedent condition by which his right to the stock was affected. (2) That the meeting of the stockholders at Corsicana on the 15th day of June, 1901, was not the action of the corporation, and no condition was imposed by said meeting upon plaintiff's right to demand and pay for his stock at any time before said stock had been canceled at the meeting of the board of directors of which plaintiff had notice. (3) That the action of the secretary in directing the Beaumont National Bank to refuse to allow plaintiff to pay the amount due on his stock, and in directing it to return the stock to the company was the act of the defendant, and a conversion of the stock which relieved plaintiff from the duty of making an actual tender of the amount due on the stock to the bank that held the same. And (4) that plaintiff is entitled to a judgment for the value of the stock, less the amount still due on his subscription for the same, to wit, $1675, leaving a balance of $2385, for which sum judgment was entered.

While there are some discrepancies between the trial court's conclusions of fact and the facts shown from the evidence in the record, it is believed that they are immaterial, and in no way affect the merits of the case on this appeal. The conclusions of the trial judge, in so far as they affect the merits of the case, are fully sustained by the record, and need no support from such testimony as the appellant claims was improperly admitted. And it will be presumed, there being ample legitimate testimony to support the court's findings, that it did not consider, and was not influenced by, any irrelevant or incompetent testimony in reaching such conclusions.

The trial court's conclusions that the time of payment of appellee's stock subscription was not of the essence of his contract, and did not constitute a condition precedent affecting his right to the stock, is rather a conclusion of fact deducible from the testimony, than one of law. This conclusion, which is supported by the testimony, seems to us to dispose of appellant's contention that according to appellee's contract for the subscription of the stock the payment of its par value on or about July 20, 1891, was a condition precedent to his right to the

32 Civil—34.

shares. There is no question about the fact that appellee was a subscriber for the number of shares of stock for the conversion of which he sued. He paid $385 of the consideration therefor, and its receipt and use by the appellant, as well as the issuance of the certificates of appellee deposited in the bank to be delivered to him upon payment of his subscription therefor, evidenced the contract of the stock subscription. The action of the company in directing the bank, in which they were deposited, not to receive the proffered payment, but to return the certificates, was the repudiation of its contract with the appellee, and, in connection with the action of its board of directors in marking the certificates "forfeited," was in effect a conversion of appellee's stock, rendering the appellant liable in damages to the appellee, the measure of which was the difference between its par and market value, less the amount due thereon as found by the trial court.

The validity and binding effect of subscriptions for stock in a corporation, whether they are made after or before the corporation is formed, is not in any way affected by the failure of the subscribers to pay the whole or part of the same, unless payment is expressly required by the charter or enabling act of the articles of association. Clark & M. on Corp., sec. 493. Article 668, Revised Statutes, provides that if a stockholder shall neglect to pay any installment, as required by the board of trustees, the directors or trustees may declare his stock and all previous payment forfeited to the use of the company; but that no stock shall be forfeited until the directors or trustees have caused a notice in writing to be served on him personally, or by depositing the same in the postoffice, properly directed to him, at the postoffice nearest his usual place of residence, stating that he is required to make such payment at the time and place specified in said notice, and that if he fails to make the same, his stock and all previous payments thereon will be forfeited for the use of the company, which notice may be served as aforesaid at least thirty days previous to the days on which such payment is required to be made. There was no pretense that the appellant complied with or pretended to comply with these statutory conditions before its attempted forfeiture of appellee's stock and cancellation of the certificates therefor. Therefore its action in attempting to forfeit the stock was absolutely void, and as before intimated, can only be taken as evidence against appellant of its conversion.

There is no error assigned requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.